Good morning ladies and gentlemen. Let me hold on a second to the Justice Chair. All right, that's a little better. And before we begin, just a heads up that the court will take a ten minute recess after the second case, between the second case and the third case. So our first case for argument this morning is Walsh v. Alight Solutions. Mr. Fabens-Lassen. Thank you, Your Honors, and may it please the court. I'm Ben Fabens-Lassen from DLA Piper, and I'm here on behalf of Appellant Alight Solutions, LLC. This court should reverse the district court's order enforcing in full the overbroad and unduly burdensome subpoena that the Department of Labor served on Alight. Mr. Fabens-Lassen, I'm sorry, forgive me, but I need to know something and it is this. Is it your argument that fiduciaries can insulate themselves from investigation by handing over all record keeping functions for their plans to non-fiduciary third party administrators? Because that, for me, seems to be the logical conclusion of the argument that the Secretary lacks authority to subpoena non-fiduciary administrators. The statute, it seems, applies to any person, not any fiduciary. Isn't that right? Your Honor, yes, that is correct. The statute allows an investigation to determine whether any person is violating Title I of ERISA. But the conduct at issue here falls well at the outskirts of the Department of Labor's limited statutory authority. Alight is not arguing that it or any of its clients that are in fact fiduciaries are per se immune from investigation or that by delegating record keeping functions to non-fiduciary record keepers that those fiduciaries cannot be subject to subpoena. But again, the conduct at issue here falls well beyond the outskirts of the Department of Labor's limited statutory authority. Well beyond the outskirts? Maybe you mean well beyond the scope? Well beyond the scope, Your Honor. And what I mean by that, I think it would be helpful to explain in part why that is so. And it begins with the Department of Labor's demand for all documents related to all cybersecurity incidents. To be clear, Alight has never experienced a conventional cybersecurity data breach, one in which a bad actor has hacked Alight's networks or systems. That is not what the Department of Labor is using the term cybersecurity incidents to include. Rather, the Department of Labor has expansively defined the term incident to include any time one of the millions of planned participants. Just a minute. Where in the record, where did Alight preserve its argument that the secretary lacks authority to investigate cybersecurity issues? I'm looking for specific record sites. And let me add, please, that I have reviewed the documents that are cited at page 11 of the reply brief. And I didn't see that argument preserved in those documents. Do you rest solely on those citations? Because in my view, those sites support a different argument from the one you're making now. Your Honor, the Department of Labor, it begins with what the Department of Labor put into its petition for enforcement. Cybersecurity was at best vaguely alluded to in the petition itself. And what happened is over the course of the litigation and the briefing, the Department of Labor, not until April 2021, did the Department of Labor claim through sub-regulatory guidance that it had broad authority to investigate cybersecurity incidences as fiduciary breach. And so it was not until after the petition had been fully briefed before the district court that Alight, sorry, that the Department of Labor pointed to the guidance that is now in its brief and, for instance, the 20-year-old regulation for recordkeeping that it is now relying on to support its authority to conduct a sweeping cybersecurity investigation. So in the initial petition, Alight did not mention, did not frame the argument as a challenge to the overarching authority of the Department of Labor to conduct a sprawling cybersecurity investigation. But that is in part because the Department of Labor never claimed to have that authority until after the petition had been fully briefed. And if you look at the cybersecurity authority of the Department of Labor, cybersecurity is not within DOL's circumscribed authority to investigate Title I violations. There is no authority with respect to conventional data breaches, much less a mere incident of the kind that are under investigation here. And there's no authority that that would. Look, the statute gives, you know, that gives subpoena powers very broadly written. It doesn't list out sort of specific areas of types of information it might seek, and it doesn't need to. Here's what it seems to do. It seems, at least, to allow the secretary to speak anything relevant to the investigation. In this instance, what we have, I think, is the secretary investigating computer security breaches that resulted in Alight possibly making unauthorized transfers of money out of its clients' employees' accounts. So cybersecurity information would seem to be absolutely relevant to that kind of an investigation. Your Honor, the issue is not just relevance. And I would like to flag your initial point about the limitations on authority. The limitations begin with the statute, of course, and the statute itself imposes limitations. It requires an actual or imminent violation of Title I of ERISA. But that's not all. The Constitution itself, and this is set out in the Morton Salt Test and has been discussed in this court's precedents, also impose a limitation of overarching reasonableness on the ability of an agency to subpoena documents. Mr. Favin's Lawson, let's build on that. Any lawyer seeing these requests is going to conclude these are broad. These are very broad requests. But when we look at the briefing, there are 32 or 33 requests. Your briefing, I think, mentions 12 of them and only gives five of them as examples of overly broad requests. Normally, wouldn't the argument here be these are the reasons why this is implicating hundreds of hours of counsel time to respond? That doesn't seem to be the gravamen of your point. There's this reference in the record that 40 hours were spent, but there's not this idea that these 33 are overly broad and then letting us know why the 33 are overly broad. Understood, Your Honor, and let me expound on that. The declaration you're referring to related to the burden that it would take to compile incident-related reports for only two months. It reflects only the burden associated with complying with a two-month sample for a seven-year period of two of 30-plus requests. But I'd like to point to other issues with the subpoena itself. The subpoena request number two demands all policies and procedures related to essentially the entirety of how a light conducts its business. It demands all contracts with all of ERISA plan clients of a light, not just those clients that have demanded an incident. And that would require extensive manual review of thousands of contracts and statements of work to determine those that are responsive. Request number six requests all documents related to a plan's termination of a light's services, regardless of whether that termination had anything to do with a cybersecurity incident. And that is an example of the lack of tailoring or over-breath of the request. And right now, before Magistrate Waisman, these types of backs and forths and drawing of the scope is occurring, right? Well, Your Honor, it's the Department of Labor's position that enforcement in full of all of the requests as written and modified on docket 18, which is the subpoena, the secretary's reply brief, are enforceable in full in light of the order. Right now, what is being discussed are compliance schedules and production schedules. So the Department of Labor's current position before the district court is that compliance in full is required. And so the entirety of this broad subpoena is within the scope of this dispute. And the over-breath as to the 32 requests, both individual requests that are over-broad, but also the subpoena as a whole, is still at issue here. And that is not being limited by the Department of Labor on remand or in the district court. In fact, the Department of Labor has expanded the subpoena since then. Ms. Dodson's declaration at 15-1 talks about the burdens associated with complying with and collecting incident-related reports. Those are only reports. Since then, the department has made clear they want all ancillary documents related to all of these incidents. And, again, an incident is any time a customer complains about potential unauthorized access or fraud involving their account, not whether it's subpoena. The secretary is contending that a light created some of the burden of which it now complains by heavily redacting the documents that it did produce, making them useless to the investigation. I might have missed this, of course, but I didn't see a response to that assertion. So maybe you would like to respond now. Yes, Your Honor. Well, at the outset, a light has produced, according to the court's order, all unredacted copies of the previously produced documents in redacted form. But it is not true that those documents were practically useless. And a light offered to sit with the Department of Labor and point to any questions about any redactions to provide clarity that might help the department understand those documents. The concern, however, with the redactions was protecting sensitive client confidential information and patient-protected PII. And I will note that concern has come to the forefront and is far from speculative, as the Department of Labor has suggested. In fact, in the district court just recently, the department took one of the documents that was stamped confidential, protected by FOIA, and filed it on the public docket. It was a sensitive meeting minutes from a light's most confidential, sensitive meetings regarding security. And they filed it publicly, saying that the reason they did so is because there is no protective order. So a light's concerns about confidentiality and redactions are not about preventing the department from being able to use the documents or being unable to prevent them from being cooperated with. We have cooperated at all turns. And certainly their concerns about being unable to use redacted documents at this point are moot because those documents have been produced. But also at all times, a light has been willing to provide the information that the government has requested. I'd also like to note that, to judge Brennan's concern, one of the requests is for detailed information about all plans, including for all of the ERISA plans, a detailed listing of all assets for each plan. And that's request 13G. That confirms this is a massive fishing expedition that is completely untailored from what it claims to be investigating. I'd also note, as to relevance, Your Honor— What's wrong with fishing expeditions? That's normally what happens in an administrative subpoena. They're trying to find out whether there is a legal problem. Your Honor, this court— Just consider what a fisherman does. I understood, Your Honor, but this court has admonished repeatedly that part of the reasonablest limitations that stem from Morton Salt are to prevent just that, a fishing expedition. Yeah, but as I say, what's wrong with fishing expeditions? It might be that if you're fishing, you have to settle for a sample. Your Honor, that is true. There are ways to tailor it, and the idea that by fishing, you mean that you're trying to confirm that the law has been complied with. Or not. Or not. Right? The department professes ignorance about whether a light is in compliance with ERISA and says, we have a right to investigate to find out. Now, you can call that a fishing expedition. The department calls that an investigation into compliance. The question of reasonableness arises with the scope of the demand. And I'll be asking this question of Ms. Unomoto as well. But I don't see why it gets you anywhere to say this is about cybersecurity or they're fishing in the sense that they don't already know we've violated the law. Everything seems to boil down to the scope of the demand. Your Honor, I think that's exactly right. But that's not the way your brief argues this case. As to the scope of the demand, Your Honor. Your brief argues this case by saying they can't seek any scrap of paper because ERISA doesn't speak directly to cybersecurity or we are not a fiduciary. Those seem to me entire distractions to the central issue in this appeal. Your Honor, I think I would like to focus on the central issue, which is the point you made about breadth. There, of course, a fishing expedition in a normal sense of seeking information that you might not know the contents of. But to demand all documents concerning all aspects of a light ERISA business for a seven-year period goes far beyond what is a reasonable scope. And that, Your Honor, I think is a key point. The scope or the breadth of the subpoena is something the Department of Labor has never addressed in its brief. And the district court never addressed in its opinion. And it believed that the concept of indefiniteness did not contemplate an analysis of scope or breadth separate and apart from whether a subpoena is burdensome. Those are two separate concepts, Your Honor. And it's made all to the forefront by this court's precedents, which reject the idea that the government can enforce a subpoena armed with nothing but conclusions about why it needs the information. I'd like to point you to a few cases briefly. In CAB v. United Airlines, this court made clear. Thank you, counsel. Thank you. Ms. Uemoto. Ms. Uemoto, I think you can see where I at least would like to begin. Assume that the department is entitled to investigate. Why is it demanding all documents for a seven-year period rather than, say, engaged in sampling? When the Department of Labor investigates violations of the Fair Labor Standards Act, sampling is the norm. Why is this subpoena a demand for all documents rather than samples? Your Honor, to first clarify a piece that you mentioned regarding the size of the subpoena. The subpoena was originally issued in November 2019 and only went back four years to 2015. So at the time it was issued, we were seeking a smaller time period of documents. But to your broader point— But I gather the department doesn't say, and we want only documents through 2019. The department now wants all documents current. That's correct, Your Honor. That's right. So seven years, as I said. So don't quibble with my question. Instead, give me your answer, please. Of course, Your Honor. My response is that at this point this court has not limited us to only sampling documents. I know the court has not limited you to sampling. I'm asking why the Department of Labor thinks it needs all documents rather than a sample of documents. Your Honor, what this ultimately comes down to is there were two active cases relating to Allite cybersecurity practices in which Allite was a named defendant. That's the Bartnett case, for example, that we mentioned and the Berman case in our briefing. EPSA separately received different reports regarding unauthorized distributions of plan documents and retirement account funds, and Allite services 20.3 million plan participants. There are a lot of retirement funds at risk, and it's the Department of Labor's duty, and within our congressional No, you're not really grappling with my question. Suppose somebody comes to the Department of Labor and says, Here's the minimum wage and overtime rules. I'm not getting the wages to which I'm entitled. The employer is, say, General Motors. It has a huge workforce. There are two kinds of things the department could do. It could say, Well, two employees of General Motors have complained, and therefore we're entitled to all wages and hours records of the entire company for a period and then insert any given number of years. Or it can ask for a sample of documents. In wages and hours litigation, the department always asks for a sample of documents. It does not demand all documents based on complaints by two workers. The question I'm asking you is, why in this case does the department think it needs all documents rather than a sample? There ought to be a simple answer to that question. Your Honor, the simple answer is that a sampling of documents will not necessarily reveal a violation of ERISA. One might say the same thing for wages and hours cases. And the other administrative cases. I mean, this is perfectly normal in tax. Sampling is normal in tax cases. It just goes on and on. I was hoping to find in your brief an explanation for why sampling is adequate for ERISA cases. Sorry, for Fair Labor Standards cases, for example, and not adequate here. But I don't find that in your brief. And the answer you've just given is, well, if we don't get everything, we might miss something. But that would be true in every administrative case you could imagine. Potentially, Your Honor, and that's another reason why in a lot of FLSA cases, as you've noted, while there are some where we do request samples, there are a great deal where we don't because it is our duty to find these violations. As I say, that would be true in every case. The wages and hours administrator could say it is our duty to find everything. Therefore, we want every scrap of paper in your files going back for the period of limitations. But that isn't done. The wages and hours people think it's sufficient to do sampling. I'm trying to figure out why. This is the same Department of Labor. Yes. Doesn't the Secretary have a consistent policy, or has the Secretary never thought about this? Your Honor, I believe the Secretary does have a consistent policy, but I think the point of disagreement for me is that the Wage and Hour Division does not always request a sampling. There are situations in which the Wage and Hour Division, similar to EBSA, the division at issue here, will request all documents. And here, we requested all documents related to ERISA plan clients. So we're looking tailored to ERISA cybersecurity because assuming that a light has the same policies that apply to all plans that it services, ERISA-covered plans, there could be similar violations. And the Department of Labor, at this investigative point, is not necessarily drawing conclusions about any certain plan or any certain practice. We are simply at the point in the investigative subpoena where we are inquiring, and we are entitled to do that within the scope that enables us to identify an ERISA violation. How would the confidential settlement agreements be pertinent to the Secretary's cybersecurity investigation? Your Honor, the settlement agreements that the Secretary of Labor requested pertain specifically to unauthorized distributions. Given that this case arose from a situation in which the Department of Labor learned of unauthorized distributions due to cybersecurity breaches, it's pertinent for us to see those documents to determine whether or not any of those settlement agreements arose out of a cybersecurity incident. All polite claims, I believe 14 of the 32 requests are unrelated to ERISA plans. And is that characterization true? And if it is, why would the Secretary need information unrelated to ERISA plans? Has the Secretary offered to limit those requests to information related to ERISA plans? Your Honor, our understanding is that the requests all pertain specifically to ERISA plan clients. And to the extent that we believe the light had confusion about the language or that it was open to interpretation, at the docket number 18 is when the Secretary of Labor limited and added specific language explaining to a light that we were only seeking documents related to ERISA plan clients. So in other words, you're saying that the characterization is not true. Yes, Your Honor. Your Honor, regarding the authority as well, a light has debated the ability of the Secretary of Labor to issue subpoenas specifically to non-fiduciaries for ERISA violations. However, this limitation does not exist in the statute. And at this point, the Department of Labor cannot say whether or not a light is a fiduciary or a non-fiduciary knowing participant because we simply don't have the documents necessary. And it is within our scope to seek documents from record keepers under ERISA. ERISA Section 504A1, the provision of the statute that we use to issue the subpoena here, permits the Secretary to seek documents in order to determine whether any person has or is violating any provision of ERISA. Notice that missing from the statute is any requirement on who the Secretary may serve the subpoena to because the recipient is not the hinge of the subpoena power. The documents are and the relevance of the documents to the subpoena requests. You know, I think we all seem to pretty much agree, I guess, that some of those requests seem rather broad, you know. But if you take a look at Request 8, which asks for all documents relating to any litigation, arbitration or legal proceedings in which a light is a party. So in other words, let's say that a light employee sued the company under the Americans with Disabilities Act. Would a light have to produce documents related to that litigation? Has the Secretary now narrowed requests 8 or 9, for example? Your Honor, I don't believe requests 8 or 9 would give rise to violations of the Americans with Disabilities Act, no. No, no, that's what I'm saying. What I'm saying is if such would occur, would they have to produce documents related to that litigation? Your Honor, the scope of the subpoena and the scope of the investigation is specific to ERISA, so no, I don't believe so. Well, have you narrowed 8 and 9 or 9, just for instance, have you? No, Your Honor, I don't believe that we've narrowed that because the investigation and the accompanying introduction and cover letter explains to a light that we were only seeking documents related to an ERISA investigation. Further, Your Honor, regarding this argument about burden, the element of burden and the facts related to burden is a question that is properly attributed to the district court. Pursuant to the Supreme Court in McLean v. EEOC, these fact-specific calls are best assessed by the district court who looked at the requests themselves, who looked at the department's supporting affidavit explaining why we're seeking these documents, and who also considered a light's response of documents and response of affidavit regarding the burden of the requests. The district court considered all the facts before this court and held that a light needs to comply with the subpoena as modified in the Secretary's request at Docket 18. They ultimately held that the burden of the requests is outweighed by the relevance of these requests to the Secretary's investigation, and this court, according to McLean v. EEOC, may only review under abuse of discretion, which, according to Johnson v. J.B. Hunt from this court, states that the appellate court may only review if the district court's decision is fundamentally wrong. Here, a light mainly brings arguments disagreeing with the district court and bringing up factual squabbles, but does not point to a clear reason why the district court's decision and weighing of all these relevant facts is fundamentally wrong. Who has the burden of showing undue burden? I was under the impression when I walked in that it is the light's burden. But if it is the Secretary's burden, what's the best argument that compliance is not unduly burdensome without relying on any extra record information like the website? Yes, Your Honor. The burden of showing that the requests or that the documents elicited by the requests are unduly burdensome or unreasonably broad are a light's burden. However, this court in EEOC v. United Airlines said that it is essentially a balancing test that the district court needs to weigh, where the court will consider the burden in light of the relevance of the request to the Secretary's subpoena. And here, the district court, in fact, used that exact test and cited to United Airlines in its decision properly considering the facts. It was pretty thin, though, wasn't it? I mean, we're talking about a nine, ten-page opinion, and that specific balancing question, he only gives a single sentence to, correct? That's correct, Your Honor. It was a relatively short decision. However, this court, as I stated earlier, pursuant to McLean v. EEOC and Johnson v. J.B. Hunt, may only overturn that decision if the district court's ruling is fundamentally wrong. And a light hasn't given an indication of why that weighing of the facts, which is properly allocated to the district court, is fundamentally wrong. Further, Your Honor, to get back to Judge Rovner's second question regarding undue burden here and facts indicating whether or not there's an undue burden, I would like to discuss the 10-K report that a light filed with the SEC, which is a public document available to the public and that of which this court can take judicial notice. It was filed on March 10, 2022, after the secretary filed our response brief, and the day before, a light filed its reply brief. And in that report, that 10-K report, a light explains its litigation risks and explains that of all of its ongoing litigation, none of it individually or in the aggregate would harm the company financially. And the test for undue burden is whether or not compliance with the subpoena would harm the business operations of the company. I don't see what the pertinence of that is. The normal rule in securities law is that you're supposed to disclose something that affects 5% or more of the value of the company. Something can be very expensive to do without affecting more than 5% of the value of the company. Yes, Your Honor. So you're saying whenever in a securities case somebody says this is not something that's material, that therefore they can't object to the subpoena? No, Your Honor. I understand the point, but I believe the distinction here is that the 10-K is supplemental evidence showing that a light hasn't assessed a financial burden. And further, Your Honor, it is a light's burden to provide evidence, according to FTC versus Schaffner from this court, that it can't comply with the subpoena or that the subpoena would harm its business operations. And a light hasn't provided that evidence. Further, in addition to filing the 10-K, which states that there's no financial harm to their company. In other words, Your Honor, we don't believe that a light has carried its burden of showing that it cannot comply with the subpoena in the district court or in this court. Thank you, Your Honors. Thank you, Counsel. The case is taken under advisement.